UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JASON G.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )  CIVIL NO. 1:20cv486 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. § 423(a). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2022. (Exhibit 9D).

2. The claimant has not engaged in substantial gainful activity since September 26, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.). (Exhibit 6D-8D).

3. The claimant has the following severe impairments: lumbar and cervical degenerative disc disease cervicalgia, chronic pain syndrome, spinal stenosis, cervical radiculopathy, lumbar facet arthropathy and spondylosis/stenosis. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to lifting, carrying, pushing and pulling ten pounds frequently and twenty pounds occasionally. The claimant can sit at least six hours in an eight hour work day and stand and/or walk six hours in an eight hour work day. The claimant should not climb or descend ropes, ladders, or scaffolds. The claimant can occasionally kneel, crouch, and crawl. The claimant can occasionally bend and stoop in addition to what is required to sit. The claimant can occasionally use ramps and stairs. Aside from use of ramps and stairs on an occasional basis, the claimant should not work upon uneven surfaces. The claimant can perform the balance required of such activities. The claimant should avoid work within close proximity to open and exposed heights and open and dangerous machinery such as open flames and fast moving exposed blades. The claimant should not perform overhead reaching and overhead work activity requiring significant cervical extension on a frequent basis.

6. The claimant is capable of performing past relevant work as an Industrial Cleaner DOT 381.687-018, SVP 2, light as the claimant performed it. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 26, 2018, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 31-38).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on November 24, 2021.  On February 1, 2022, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on February 10, 2022. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

Plaintiff filed a previous claim for benefits in March 2016, alleging disability beginning in August 2014. (Tr. 237). This claim was denied, and Plaintiff continued to work and received earnings above substantial gainful activity levels in 2016 and 2017, with additional earnings in 2018. (Tr. 207). According to his testimony in support of his present November 17, 2018 application, he worked as a sanitation worker at a poultry farm during this period. (Tr. 51-54).

In June 2017, approximately 15 months before his alleged onset date, Plaintiff experienced an on-the-job back injury. (Tr. 557). An MRI the following month showed degenerative changes in the lumbar spine with mild desiccation and loss of disc height, and a small posterior annular bulge and disc herniation without significant canal or foraminal stenosis. (Tr. 490-491). Plaintiff underwent an independent medical examination for Workers' Compensation purposes in January 2018, during which he reported back pain ranging from 1-2/10 at rest and 4-5/10 with activity. (Tr. 493). Physical examination showed a mildly antalgic gait with decreased flexion and extension of the lumbar spine. (Tr. 493-494). The examiner opined Plaintiff had not yet reached maximum medical improvement. (Tr. 494). Aside from this examination, Plaintiff did not undergo any treatment between July 2017 and a motor vehicle accident in September 2018, after which he alleges he became disabled.

Plaintiff reported an increase in back and neck pain following the September 2018 accident. In an October 2018 treatment visit, he described aching and burning pain that was 4/10 in severity. (Tr. 652). Physical examination showed tenderness in the cervical spine with normal range of motion. (Tr. 654). He started physical therapy that month, where he reported 6/10 cervical spine pain radiating into the upper extremities, along with chronic back pain that was unchanged and mild. (Tr. 593-595). During his second visit, he reported "funny sensations" in his neck and down his arms, but rated the pain at 2/10. (Tr. 596). His response to PT intervention was described as "good." (Tr. 599). An MRI that month showed a large central disc protrusion at C6-C7 with moderate to severe central canal stenosis, with no cord signal changes. (Tr. 496). During a pain clinic visit in November 2018, Dr. Charles Lindzy, whom Plaintiff had previously seen for back pain, stated: "[Plaintiff] has actually not been seen since November 4,

5

2016. He reports he did not return to follow up after that appointment because overall he felt he started feeling better." (Tr. 507). Plaintiff stated that his neck and back pain had worsened since the accident. (Tr. 507). Objective examination showed very mild tenderness along the lumbar spine, no tenderness over the SI joints, normal flexion and extension, and grossly intact motor and sensory functions in all extremities. (Tr. 508). Dr. Lindzy recommended Plaintiff keep his upcoming appointment with orthopedic physician Dr. Alan McGee, and opined he may be a good candidate for lumbar epidural steroid injection. (Tr. 509). Several days later, Plaintiff visited Dr. McGee and described numbness and tingling in the neck to the upper extremities, but classified the pain as 2/10, reported he could stand and sit for 30 minutes, and denied needing rest when walking. (Tr. 499). Physical examination showed normal reflexes and sensation in the bilateral upper extremities. (Tr. 499). Dr. McGee discussed surgical intervention, and Plaintiff stated that he wanted to think about his options. (Tr. 500).

During a PT visit later in November 2018, Plaintiff reported no new complaints and described the pain as 3-4/10. (Tr. 527). One week later, he described the pain as 2-3/10 and showed good response to treatment. (Tr. 529-530). The same week, he reported increased soreness after traveling to Fort Wayne, but continued to describe the pain as 2/3-10 and show a good response to treatment. (Tr. 531-532). The following week, he described an increase in pain "as a result of laying flooring at his home over the weekend." (Tr. 538). Later that month, he was discharged from physical therapy, and indicated that he was likely to undergo cervical fusion surgery in the next couple of months. (Tr. 536-537). In December 2018, Plaintiff told Dr. Lindzy that physical therapy was not helping much, and that he intended to have surgery with Dr. McGee. (Tr. 541). He reported that prescribed Gabapentin helped his pain but made him feel

"foggy." (Tr. 541). Physical examination showed mild tenderness to palpation in the cervical and lumbar spine, with normal flexion and extension and no sensory deficits or reduced strength in the extremities. (Tr. 542).

Although Plaintiff sought treatment for acid reflux and epigastric pain in 2019, (Tr. 640-649), the record shows no additional treatment related to Plaintiff's spine condition after December 2018. Plaintiff confirmed at the hearing that he did not undergo surgery and did not receive additional treatment for his back or neck condition after December 2018. (Tr. 60-62).

In his application for benefits, Plaintiff alleged disability beginning September 26, 2018. Plaintiff was 46 years old on his alleged onset date. His date last insured is December 31, 2022. Plaintiff has at least a high school education and has past work as an order picker, recycling laborer, mold setter, and forklift operator.

In support of remand, Plaintiff first argues that the ALJ failed to properly account for Plaintiff's reasons for not proceeding with neck surgery. This is essentially an argument that the ALJ's subjective symptom analysis was erroneous. However, for the reasons set forth below, this Court finds that the ALJ's analysis of Plaintiff's subjective symptoms was supported by substantial evidence.

In his decision, the ALJ noted evidence of limited and conservative treatment, significant gaps in treatment, and lack of documentation/inconsistencies between Plaintiff's testimony and the objective record. *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017) (an ALJ should evaluate a claimant's subjective statements based on factors including the location, duration, frequency, and intensity of pain symptoms, effectiveness of medications, and treatment other than medications received for pain, but need only address "the factors

7

pertinent to the evidence of record.") It is within the ALJ's purview to resolve conflicts between a plaintiff's testimony and the record. *DeFrancesco v. Bowen*, 867 F.2d 1040, 1043 (7th Cir. 1989) ("The administrative law judge is entitled to resolve conflicts in the oral testimony against the claimant . . . ."). Courts will defer to an ALJ's assessment of a claimant's subjective statements as long as it is supported with specific reasons from the record, "unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (citation omitted).

    Here, the ALJ explained that the evidence of record "simply [did] not support the severity of level of limitation [Plaintiff] reports." (Tr. 34). As discussed above, the record contains little evidence of treatment during the period relevant to the present application for benefits (September 26, 2018 through March 4, 2020). Plaintiff attended several physical therapy sessions and doctors' appointments in which he discussed a possible neck surgery, but ultimately he did not undergo surgery – and in fact, did not receive any further treatment for his neck or back condition after December 2018. (Tr. 60-64). The treatment Plaintiff did receive during the September-December 2018 period showed largely benign findings. While an October 2018 cervical spine MRI showed a large central disc protrusion at C6-C7 with moderate to severe canal stenosis, (Tr. 496), the next month Plaintiff reported 2/10 pain, and physical examination showed normal reflexes and sensation throughout both arms. (Tr. 499). During a treatment visit with Dr. Lindzy the same month, Plaintiff reported that he was experiencing worsening back pain since his accident. (Tr. 507). However, objective examination showed only very mild tenderness along the lumbar spine, no tenderness over the SI joints, normal flexion and extension, and grossly intact motor and sensory functions in both arms and legs. (Tr. 508).

Over multiple physical therapy visits in October and November 2018, Plaintiff reported pain ranging from 2-6/10 in severity, while treatment notes generally described a "good" response to intervention. (Tr. 527-530, 531-532, 536-537, 538, 593-595, 596-599). Although Plaintiff told Dr. Lindzy that physical therapy was not helping much in a December 2018 visit, (Tr. 541), Dr. Lindzy's physical examination showed only mild tenderness to palpation in the cervical and lumbar spine, normal flexion and extension in his back, and no sensory deficits or reduced strength in the arms or legs. (Tr. 542).

As the ALJ noted, despite Plaintiff's explanation that he stopped physical therapy because there was nothing more they could do for him, there was no evidence that he was discharged due to reaching maximum medical improvement. (Tr. 36; *see* Tr. 62). Rather, the record reflects only that he stopped physical therapy because he intended to undergo surgery. (Tr. 536). But again, he ultimately did not pursue surgery, nor did he return to physical therapy or any other treatment for his back or neck. Thus the ALJ concluded that Plaintiff's subjective allegations lacked clinical correlation. (Tr. 35). The ALJ's analysis was proper, and the conclusion reasonable and well supported by the above evidence. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming adverse credibility finding based on "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session"); *Massaglia v. Saul*, 805 F. App'x 406, 410 (7th Cir. 2020) ("An ALJ may consider the effectiveness of a claimant's treatment in making a credibility determination.")

In addition to evidence showing benign and conservative treatment, the ALJ also noted the significant gaps in treatment. (Tr. 33-36). Even before the relevant period, Plaintiff received very sparse treatment; the record demonstrates that he did not seek or receive treatment between

9

November 2016 and an on-the-job injury in July of 2017. (Tr. 507; *see* Tr. 525). Thereafter, he did not seek treatment until after his September 2018 motor vehicle accident. (Tr. 57). When Plaintiff saw Dr. Lindzy in November 2018, Dr. Lindzy remarked: "[Plaintiff] has actually not been seen since November 4, 2016. He reports he did not return to follow up after that appointment because overall he felt he started feeling better." (Tr. 512).

Following the accident, Plaintiff returned to physical therapy in October 2018. (Tr. 592), but discontinued it the following month. (Tr. 538). And while he met with Dr. McGee once in November 2018 and discussed surgical intervention (Tr. 499-500), he ultimately did not undergo surgery, or receive any other relevant treatment after December 2018. (Tr. 59-61).

The significant gap in treatment and lack of treatment since December 2018 was a proper and reasonable consideration by the ALJ, and provides substantial evidence in support of the ALJ's analysis of Plaintiff's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *8 ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"); *Burnam v. Colvin*, 525 F. App'x 461, 465 (7th Cir. 2013) (upholding ALJ's subjective symptom evaluation where "the ALJ pointed to specific evidence undermining [the plaintiff's] assertions of disabling pain, including her repeated failure to undergo even the conservative treatment option of epidural injections to alleviate her back pain").

Additionally, As the Commissioner has pointed out, the ALJ noted multiple instances where Plaintiff's statements during the hearing were inconsistent with other evidence in the record, and where his explanations for those discrepancies were themselves contradictory or

10

implausible. (Tr. 33-36). For example:

- <u>Plaintiff's explanation that he took only Tylenol because his family doctor would not prescribe even muscle relaxants</u>. (Tr. 67). The ALJ contrasted this explanation with the record, which demonstrates that Plaintiff "emphatically refuse[d] any narcotics/non-narcotics/muscle relaxers" during the ER visit following his June 2017 injury. (Tr. 33-34; *see* Tr. 525).

- <u>Plaintiff's selective use of a cane</u>. Plaintiff showed up to the hearing with a cane, which he admitted was not prescribed or recommended. (Tr. 49-50). The ALJ asked if the medical records would note the use of a cane, and Plaintiff answered that they would not because he had not "really been to many doctor's appointments." (Tr. 49-50). The ALJ noted that even when Plaintiff did go to the doctor, there was no evidence of the use of a cane during any of Plaintiff's treatment visits. (Tr. 34). The record makes no reference to any use of an assistive device aside from the temporary use of a walker following the 2017 injury, noted in the January 2018 independent medical examination (before the relevant period). (Tr. 492).

- <u>Plaintiff's assertion that he discontinued physical therapy because nothing more could be done</u>. (Tr. 34; *see* Tr. 60). As noted above, the record demonstrates multiple instances where Plaintiff indicated that physical therapy and medications were improving his symptoms. (Tr. 366, 376, 380, 397, 465, 527, 531, 533). Moreover, despite Plaintiff's assertion that he discontinued physical therapy because nothing more could be done, (Tr. 60), the most recent physical therapy records do not corroborate this; instead, they indicated a good response to treatment (Tr. 527-537) and that Plaintiff was discharged based largely on the expectation that he would soon undergo cervical spine surgery. (Tr. 536).

- <u>Plaintiff's work history</u>. The ALJ noted that Plaintiff worked at substantial gainful activity levels for three years after his prior application was denied. (Tr. 34; *see* Tr. 207). Although Plaintiff attempted to downplay the extent of his work activity during this period (Tr. 51-52), the ALJ noted there was no documentation to support Plaintiff's allegations of underperformance at work or neglect of certain job duties. (Tr. 34). Rather, the record contains evidence of Plaintiff "working long hours" in October 2015, (Tr. 376) and dealing with "more physical labor" after others quit in January 2016. (Tr. 475).

- <u>Strenuous physical activity during the relevant period</u>. A November 2018 physical therapy note indicated that Plaintiff reported increased soreness "as a result of laying flooring at his home over the weekend." (Tr. 533). The ALJ asked Plaintiff about this note, and Plaintiff responded "I'm guessing that might have been conversation to make myself look good in front of people…but no, I did not

11

lay the flooring." (Tr. 78-79). The ALJ was entitled to "resolve conflicts in the oral testimony against the claimant." *DeFrancesco*, 867 F.2d at 1043.

- <u>Plaintiff's testimony that he spent 23 hours per day lying down</u>. (Tr. 90-91). The ALJ explained that SSR 16-3p provides (as one example of objective evidence not supporting a claimant's allegations) that an individual who reports standing and walking no more than a few minutes per day would be expected to have some signs of muscle wasting as a result. (Tr. 34). *See* SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017). But there was no evidence of muscle wasting here.

The ALJ concluded that "unsubstantiated allegations undermine the weight that can be accorded to [Plaintiff's] subjective allegations." (Tr. 36). Clearly, this conclusion is reasonable and well supported by the above evidence. *See DeFrancesco*, 867 F.2d at 1043.

Plaintiff argues that the ALJ erred by not properly accounting for his reasons for not proceeding with neck surgery. This argument presupposes, without any support, that Plaintiff's decision to forgo neck surgery formed the primary basis for the ALJ's conclusion. As discussed above, this decision did not form the sole or even a significant basis for the ALJ's conclusion with respect to Plaintiff's subjective reports. The ALJ merely mentioned that Plaintiff did not go through with surgery as one subsidiary finding in his larger point that Plaintiff did not seek or receive treatment for the majority of the relevant period. (Tr. 36). The ALJ's only other mention of surgery in his discussion of the evidence was to note that references to surgery (in Plaintiff's PT notes) appeared to be based on Plaintiff's statements, and not a clinical recommendation. (Tr. 35; *see* Tr. 527-536).

The record demonstrates that Plaintiff discussed the possibility of cervical fusion surgery in November 2018 with Dr. McGee, and indicated that he was going to "think about his options." (Tr. 505). However, as the ALJ noted, Plaintiff never returned for additional treatment with Dr. McGee. (Tr. 36). He saw his primary care provider, Dr. Lindzy, the following month,

12

and reported that he would have surgery. (Tr. 612). Dr. Lindzy felt that Plaintiff was a good candidate for and "should do well" with the surgery. (Tr. 614). Yet Plaintiff never went forward with the surgery, nor did he pursue any other treatment for neck or back pain after this visit through the date of the decision. (Tr. 60-61).

This Court agrees with the Commissioner that, to the extent that the ALJ may have weighed Plaintiff's decision not to pursue surgery in assessing the overall severity of his symptoms, as one factor among many, this alone does not show prejudicial error. *See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011)(holding that ALJ's credibility determination was supported by substantial evidence, although she did not explain why she discounted plaintiff's reasons for declining surgery, when ALJ relied on evidence of exaggerated symptoms and limitations as well as inconsistencies between subjective complaints and objective evidence.)

Plaintiff explained his reasons for declining to pursue surgery at the hearing (uncertainty as to the outcome), (Tr. 61), but asserts that the ALJ did not "acknowledge" his explanation or consider whether he had a "good reason" for doing so. But again, this presupposes that Plaintiff's decision not to pursue surgery formed the sole or primary basis for the ALJ's assessment of Plaintiff's subjective reports, which is not supported by the record. (Tr. 33-36). Rather, as the ALJ noted, not only did Plaintiff not pursue surgery, he did not receive any other treatment for his neck or back conditions after December 2018. (Tr. 36).

Plaintiff also suggests that the ALJ was required to discuss his fear of surgery and lack of "robust" medical insurance or an inability to pay for the procedure. Such considerations, although they may be relevant in certain circumstances, are not relevant here. The ALJ did not question Plaintiff's decision to forego surgery, and there is no evidence that the ALJ held this decision

13

against Plaintiff in his analysis.

Plaintiff also argues that the ALJ's evaluation of his symptoms was deficient due to his "focus on a spare page" in the physical therapy reports, and his supposed "fail[ure] to delve into" evidence suggesting that treatment goals were not met. (Pl. Br. 11). The "spare page" that Plaintiff references appears to be the November 2018 physical therapy note, where he reported increased soreness as a result of laying flooring at his home. (Tr. 533). Plaintiff appears to suggest that the ALJ was either required to accept his explanation at the hearing that he did not actually lay flooring and this report "might have been conversation to make myself look good in front of people," (Tr. 78-79), or that the ALJ improperly focused on this note while ignoring contrary evidence. However, the ALJ was entitled to "resolve conflicts in the oral testimony against the claimant." *DeFrancesco*, 867 F.2d at 1043. This treatment note was also consistent with other contemporary evidence, where Plaintiff reported increased pain after a long drive the same month (Tr. 531), but noted during other visits that his pain was in the 2-3/10 range. (Tr. 527, 529)

Plaintiff claims that the ALJ ignored favorable evidence in Plaiintiff's physical therapy records, including that a "cervical distraction" test indicated cervical radiculopathy and that "no goals were really met" in physical therapy. However, the ALJ acknowledged that Plaintiff had cervical radiculopathy in finding the condition to be a severe impairment. (Tr. 31). It is Plaintiff's burden to demonstrate that the cervical distraction test suggests a greater degree of limitation than the ALJ found, or that the ALJ's failure to discuss it undermined his decision. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). Plaintiff has not met his burden.

Moreover, while Plaintiff was discharged from physical therapy in November 2018 with

the expectation that he would undergo cervical fusion surgery, (Tr. 536), he points to nothing that suggests physical therapy was unhelpful in the treatment of his symptoms. Rather, several physical therapy notes from November 2018 described a "good" response to PT intervention. (Tr. 528, 530, 532, 534). The discharge note from Plaintiff's final visit also indicates that short-term goals were "met" or "partially met." (Tr. 536).

Plaintiff also questions other minor details in the ALJ's decision, asserting that they raise "red flags," while failing to explain how the supposed errors demonstrate greater limitations. For example, the ALJ cited to SSR 16-3p for the proposition that the lack of any muscle atrophy on examination was inconsistent with Plaintiff's testimony that he was lying down 23 hours per day. (Tr. 34; *see* Tr. 90-91). Plaintiff asserts that his report of lying in a recliner or on the couch is "not reasonably considered as equivalent to bedrest that is expected to trigger certain atrophy." (Pl. Br. 12-13). This argument is speculative and unsupported, and also ignores that the ALJ's analysis is fully consistent with SSR 16-3p. In any event, as discussed above, the ALJ only noted this factor as one among many in explaining why Plaintiff's subjective reports were inconsistent with the evidence. (Tr. 33-36). Plaintiff's argument fails to show error in this analysis.

Plaintiff next argues that the ALJ failed to consider that he was a "fighter" and "working hurt", but this argument is unsupported. SSR 16-3p provides that, as was the case here, an ALJ should consider a claimant's "prior work record and efforts to work" in assessing subjective symptoms, 2017 WL 5180304, at *6. (Tr. 34). Here, the ALJ reasonably questioned how Plaintiff was able to work at substantial gainful activity levels for two years after the denial of his prior disability application, when he denied that his symptoms had since improved. (Tr. 34; *see* Tr. 51-52). Moreover, Plaintiff testified that his job duties during this time involved shoveling egg

15

product on the floor into barrels that he then dumped, pressure-washing machinery, scraping floors, taking out trash, and operating a manual copper tube bender. (Tr. 52-56). It was reasonable for the ALJ to question Plaintiff's testimony that his symptoms did not improve after his earlier claim in light of this strenuous work activity. It also appears quite likely that Plaintiff exaggerated his symptoms and limitations in his prior application for disability benefits, which calls into question his veracity with respect to his present application.

The ALJ also considered Plaintiff's allegations that his symptoms affected his job performance but no one was aware that he was underperforming. (Tr. 52 (testifying that he did not perform all of his job duties and that his employer didn't notice because "there was no supervision other than myself and a small handful of people.")) The ALJ reasonably explained that there was no evidence to support this "convenient" explanation. (Tr. 34). "It is not 'cherry-picking' to find some portions of testimony less credible than others." *Baird v. Berryhill*, No. 17-472, 2018 WL 4874757, at *5 (N.D. Ind. Oct. 9, 2018). Moreover, Plaintiff's treatment reports reflect that he did not seek treatment from the pain clinic between 2016 and 2018 because he was "feeling better," which further supports the ALJ's hesitance to credit Plaintiff's weak explanation. (Tr. 34; *see* Tr. 507). Clearly, Plaintiff has shown no error in the ALJ's consideration of his work history, and has not demonstrated that the ALJ improperly cherry-picked or narrowly focused on negative evidence. *See Miller v. Colvin*, No. 12-50440, 2015 WL 1915658, at *6 (N.D. Ill. Apr. 27, 2015)("If an ALJ may not cherry pick medical records in an attempt to highlight only the 'good days,' then a claimant cannot cherry pick medical records to only highlight the bad days.")

Plaintiff's remaining arguments, that the ALJ did not acknowledge GI difficulties with

16

medications, or that the ALJ used the January 2018 workers' compensation examination against him, are also meritless. The ALJ mentioned Plaintiff's refusal to consider medications for back pain following his June 2017 injury as one factor in his subjective symptom analysis. (Tr. 35; *see* Tr. 525). This was a reasonable and proper consideration. *See Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) (turning down treatment options may suggest exaggeration of symptoms); *Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007) ("Schmidt's medical history indicates that she voluntarily discontinued physical therapy and declined to pursue pain management, both of which cast doubt on the severity of Schmidt's pain and her need to alleviate it.").

Plaintiff also argues that the ALJ used the workers' compensation exam against Plaintiff, which argument is difficult to decipher. The ALJ's only mention of this examination was to note that it showed Plaintiff demonstrated mild symptoms and some limited strength. (Tr. 35). This was a factual statement with respect to Plaintiff's functioning at that time. The examination did note that Plaintiff had not reached maximum medical improvement at that time, (Tr. 494), but the ALJ did not indicate that he found this significant. (Tr. 35). The ALJ then later stated, in an unrelated discussion, that Plaintiff was not discharged from physical therapy due to maximum medical improvement. (Tr. 36). Plaintiff's assertion of some sort of problematic "implicit reference," based solely on the ALJ's use of the phrase "maximum medical improvement", is baseless.

Plaintiff also asserts, without evidence or support, that "sit/stand limitations are at-issue in this case, and … should have been assessed with greater delineation." (Pl. Br. 14). As the Commissioner notes, the only apparent bases for this assertion are that Plaintiff's counsel asked the vocational expert at the hearing a hypothetical question that included a sit/stand limitation,

17

(Tr. 95); and that the ALJ allegedly made the topic "implicitly at issue" by emphasizing that Plaintiff was not noted to be "up and down, fidgeting, moving around or using a cane" during any medical evaluations. (Tr. 34). Plaintiff does not challenge the accuracy of this statement, nor explain how the absence of evidence that he required position changes somehow puts that limitation "at issue." *See Eichstadt*, 534 F.3d at 668 (it is Plaintiff's burden to demonstrate why the record supports greater limitations than those assessed in the RFC).

Nothing in the record shows a specific need for a sit/stand option, and Plaintiff has cited to no evidence that such an option was necessary. As the Commissioner correctly argues, simply because Plaintiff's counsel proposed such a hypothetical at the hearing does not make a sit/stand option "at issue," and certainly does not require the inclusion of such a limitation in the RFC. "[T]he ALJ is not required to address a vocational expert's testimony as to a particular hypothetical when the ALJ determines that the hypothetical does not accurately reflect the claimant's limitations." *Terry E. v. Kijakazi*, 19-05722, 2021 WL 6125844, at *6 (N.D. Ill. Dec. 28, 2021) (citations omitted); *accord Alvarado*, 836 F.3d at 751 (7th Cir. 2016) ("the ALJ was only required to incorporate limitations that [he] found supported by the evidence."). Plaintiff has pointed to no such evidence here that the ALJ may have overlooked. Therefore, he has not carried his burden of demonstrating that the record supported a sit/stand option specifically, or a more restrictive RFC generally.

For all of the above reasons, there is no basis for remand on any of the issues raised by Plaintiff.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: February 18, 2022.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court